Now call the case. Case number 20-13356, Libertarian Party of Alabama v. John Merrill. Morning, Council. Looks like we have Mr. Schoen for the appellant, and he's reserved five minutes for rebuttal. You may begin when you're ready. Thank you, Your Honor. I am David Schoen, and I represent the Libertarian Party of Alabama. I'm sorry to be sitting down when I talk to the court. It feels a bit awkward, but I am. I have two housekeeping issues to raise very briefly. One, there's a typographical error in my brief. I'm sure there are many, but that just reflects my poor grammar, probably. There's one that's actually material, and that is on page 45, second line from the bottom. The year is written as 2020. It should be 2000. One other housekeeping thing, I raised this only to alert Judge Brasher to the situation so that he can think about it at least. Last week, when I learned the makeup of the panel, I realized or learned that Judge Brasher was actually the distinguished solicitor general of Alabama when this case was in the office for about five months, from January to May of 2019. That triggered, ostensibly at least, judicial canon 3C1E and 3C1B, government employee during the time of the case and so on. I'm satisfied that in researching the law briefly, unless Judge Brasher was an advisor or counsel in the case, was called upon to give an opinion or anything, I don't think there's an issue here. There is some authority that the attorney general or the U.S. attorney in an office is responsible for all litigation, but the solicitor general cases are pretty clear, unless the solicitor general had some doings with the case specifically. I asked General LaCour if he was aware of any overlap, and he said that he looked into it and there was no indication of Judge Brasher at that time, General Brasher, had anything to do with the case. I just ask you, Judge Brasher, think about if anything rings a bell, I just leave that up to you. I'll just say for the purposes of the record, at the time I had recused myself from all Middle District of Alabama cases because I had been nominated to be a judge in the Middle District of Alabama. So I was fairly confident that I never had anything to do with this case while I was pending in the district court. Thank you, Your Honor. This kind of issue gets missed by the certificate of interest of persons. I just wanted to raise it for you to think about. Thank you very much. This is as straightforward a case as will ever come before this court, I believe. There's an unbroken line of authority that supports the Libertarian Party of Alabama's position, without exception, going back at least 50 years. The issue in the case is simple and straightforward. Whether it passes constitutional muster for a state to provide its taxpayer-funded, computerized, mandatory statewide voter registration list free of charge to major political parties while charging an exorbitant fee to minor political parties. That's the exact issue that was struck down in Socialist Workers' Party v. Rockefeller. We've argued in the brief that that summary affirmance is binding on the court because it does involve the exact same issues. But even beyond that, every other court that has considered the issue has gone in our direction based on the fundamental principle that we cannot discriminate against minor parties in this context. Now, sure, there are contexts. Counsel, if I can break that down a little bit. First of all, you mean every court other than the Fourth Circuit, the most recent one to address the issue, right? I don't mean that, Judge. Fostaro v. Kogan in the Fourth Circuit certainly goes in our direction. All right, so I want to talk about Socialist Workers' Party because obviously that's the one that would be binding on us if it did apply. So there, as I understand it, the issue is framed by the district court, the three-judge district court in that case, was that independent or minority parties which have succeeded in gaining a position on the ballot but which have not polled 50,000 votes for governor were ones that were deprived of the list. That is, you agree, how the three-judge panel described the issue there? Right, Your Honor, but the problem here is that the state has misread that. Certainly, what it doesn't mean is that the Socialist Party in that case had achieved ballot access. What it does mean is if a party achieves ballot access, for example, many members of the Libertarian Party have achieved ballot access in various elections, but they haven't gotten, in the Socialist Party case, 50,000 votes. The problem though, counsel, is that the U.S. Supreme Court in summarily affirming relies on the opinion that's prepared by the district court, and that frames the issue with which we are bound by. And if the issue with which we are bound by is that the law that was at issue there excluded those who had gained ballot position from having the list, that's exactly the opposite of what the statute is here. Respectfully, Your Honor, it is not. Members of the Libertarian Party of Alabama have achieved ballot access, but that's not the line that's drawn in Alabama. And so like in Socialist Workers Party, some people might have gotten ballot access, but they didn't achieve ballot access by becoming major party ballot access. They didn't get that 50,000 threshold. In Alabama, members of the Libertarian Party have achieved ballot access in random elections, but they haven't achieved the 20% threshold, the major party status that would entitle them to a free voter registration list. They don't get a statewide free vote. That's not true because we know in 2000 they did. And we know that other minor parties have as well, right? Right. Well, in 2000 they achieved minor, they achieved that 20% in a race in which only one major party ran. That's true. And so that's how they show the bona fide of their of their party. But Mandel versus Bradley and other cases say the fact that one party has ever qualified doesn't answer the question. I guess my question, though, going back to what we were doing is we got a little off topic. If Socialist Workers Party is to be binding on us, it would seem that the issue has to be identical. And the issue there was was a statute that prohibited someone who had gained ballot access from having the list, whereas Alabama seems to give the list to each party, each being in the statute, who gains ballot access. Right. Respectfully, Judge, I'm not sure how else to say it. It's the exact same situation. Socialist Workers Party said that the fact that you've gained ballot access doesn't entitle you to the list. You need to get the 50,000 vote threshold. In Alabama, the fact that a Libertarian Party candidate has gotten ballot access in any race doesn't qualify that person to get the vote of statewide voter registration list. That person has to get the 20 percent threshold, which is like the 50,000 threshold in Socialist Workers Party. In fact, we know that Socialist Workers Party hadn't gotten ballot access because page 987, the opinion. If the if a minor party gets ballot access in any race, whether it's statewide or not, they get the list for that. No, Your Honor, it's simply not right. That's simply wrong. They don't get the statewide list. It's the statewide list that we're saying is the issue here. And we have expert testimony, a late testimony that tells why a party, a third party trying to grow needs a statewide list. Let me ask you this in Swanson. One of the issues was among many was the 3 percent ballot issue, but also was the date for collecting. And the argument made by the minor parties in that case was that the only way that we can get the signatures is if we have access on primary day. And you've now set the deadline for primary day, which means that our best avenue for getting on the ballot is gone. And we said there that that was a reasonable regulation. We pointed out that the Supreme Court had approved those similar regulations, as had other courts, and that we only applied the reasonable the lesser scrutiny under under Anderson-Burdick. Yes, Your Honor. The same argument is being made here that we are prohibited from from gaining access. You've now limited us from getting the signatures. And that is a severe restriction. How is how is Swanson not pretty close to and should not guide our analysis? Registration lists are different. That's the simple answer. And the courts have recognized that, just like this court has recognized that a fee waiver that discriminates between major parties and minor parties is unconstitutional. That's Fulani.  But how is there discrimination here, counsel? Because the statute lists each party. In other words, it doesn't matter whether you're a quote unquote major or minor party. Any party. I could start one tomorrow and get 3% of the voters from the last gubernatorial election in Alabama, and I would get on the ballot no matter what. So how is it discriminatory if the law applies equally to all parties? The law doesn't apply equally to all parties. What the courts have said is that for these purposes, voter registration lists, major parties and minor parties are similarly situated. And the law treats those similarly situated parties differently. That's what Socialist Worker Party is all about. Here's how it treats it. It seems to be a dispute. But counsel, that seems to be a disparate impact argument as opposed to a disparate treatment. Not at all. Discrimination. Discrimination would seem to be saying these two and only these two get it and no one else will get it. But what happened here? First of all, in answer to that, I mean, I list in the brief the number of parties that get a free list other than the minor parties. But here the criteria is whether you are a major political party or a minor party. And the reason voter registration lists are different, different from Swanson, different from deadline cases, different from number of signature, ballot access signature cases, because voter registration lists are the tool to gain access, to gain. Wasn't that exactly the argument that was made in Swanson for the deadline? That was the exact. No, Your Honor, it's not. Those deadline cases are materially different. Voter registration lists are different. Voter registration list is the first thing that allows the party members to identify prospective voters, to get their message out, to get ballot access. I'm going to read to you. This is from Swanson. This is the description of the issue. And I know we're out of time. Is it OK if I ask this question, Judge Breyer? Yes. Thank you. This is on page 902. It says plaintiffs raise these two issues. And in issue two, it says, does the Alabama statute abridge the First and 14th Amendment rights of candidates and voters by denying them the only meaningful opportunity to collect signatures and meet the threshold? Isn't that exactly the argument that you were making and have made here? Absolutely not, Your Honor. I set out a variety of reasons why this list is particularly important, vitally important, and I do it with evidence from the party members with expert testimony. There is nothing else like the voter registration list. Let me ask you one more question, Mr. Schoen, before you sit down, and I'll make sure that you have your full time for rebuttal. You spend a lot of time in your briefs explaining why the Libertarian Party is a bona fide party, and I understand why you do that. But as a constitutional matter, why should a newly formed party be any less entitled to the voter registration list? I don't think they should, Your Honor. It's just that the other side, during the course of the case, tried to make the point that, well, this is just a nothing sort of party. We showed that this is a branch of the National Party. We showed how the National Party did in the election, previous two elections, and that part of it. And the other reason is, you know, we know from these cases, Socialist Workers' Party and others, that there's not a principle yet that everybody could get it for free if you get it to the big parties for free. Of course, these were done in the days of, you know, mimeographing, not when it took pressing a button to send an email, as the evidence in this case is, to send a list that's compiled and provided on a monthly basis for free. To Eric, that's all that's required. So, in this case, I do think that every minor party recognizes the minor parties did get, and there is no administrative burden. And any administrative burden would be outweighed by the fundamental constitutional rights at issue. Thank you. Thank you, Your Honor. Mr. Boudry. Thank you, Your Honor. Barry Boudry for Secretary of State John Merrill. In LPA's briefing, LPA did not argue that the Constitution requires Alabama to treat all self-identified political parties alike, or that the Constitution prohibits the state from subsidizing political parties that perform with a copy of the voter registration list. The only challenge that they brought was that the Constitution requires Alabama to draw a different dividing line for determining who gets the free copy of the list. That is a little bit different than what my friend just said, but in their briefing, specifically the blue brief, page 22, note 11, they expressly disclaimed the argument that all self-identified political parties should be treated alike. And instead, they simply argued that the LPA should be, wherever you draw the line, the LPA should be on the receiving end of it, of the subsidy. As the district court correctly held, the answer to the constitutional question of whether Alabama has to draw a different dividing line is no, the Constitution does not require that. And that's for at least two reasons. First, under Anderson's verdict, drawing the dividing line at ballot access imposes only a minimal burden on any party that exercises reasonable diligence. And while LPA claims that it should be treated like the major political parties, or the statewide political parties it compares itself to, the evidence in the record demonstrates that LPA is not like those parties in very material ways. Second, drawing the line at ballot access furthers Alabama's important state interests in providing a subsidy to the political parties that act as quasi-public institutions, and it does so using an objective, neutral, and easy-to-administer dividing line. Let me ask you, what's your response to the party's argument that the burden is actually more severe than in a ballot access case because access to these lists is what enables a party's candidate to make it onto the ballot? Yes, Your Honor. I think that is wrong for a couple of points. The first is that when we're categorizing the burden of issue, the first part of the Anderson verdict test, we're trying to determine what is the right that is at issue. And as the Fisaro Court in the Fourth Circuit pointed out, access to the voter registration list is not a fundamental right, it's not a pure political right, it's not speech, it's not association, it's not the right to vote. It is downstream from those, and so we do think Anderson verdict applies, but it is not a right itself. And so as the Fourth Circuit held in Fisaro, because of that, it is more likely to be a minimal burden, one in which rational basis review would apply rather than strict scrutiny. I would also argue that the evidence shows— we're looking at a burden that the state imposes on somebody. So it's a voter ID requirement or it's something that prevents them from accessing the ballot. You know, you've got to get this many signatures. Here, we're sort of looking at the denial of a benefit, maybe, which is the free list. How should that matter at all, if at all, in the way we look at the severity of the burden? Yes, Your Honor. I think the—two responses. One is that I think the Fisaro court is right that the subsidy aspect and that this is a government record to which there is normally no right to access provides a thumb on the scales on both parts of the Anderson verdict analysis, both when we're talking about the burden and the state interests. Here, LPA has claimed or its challenge is that it affects its associational rights downstream of the regulation, to be sure. And so we do think Anderson verdict applies. But it's also possible that something else would apply, such as rational basis, in which case I don't think there would be any question that the state law passes constitutional muster. Is the second answer to Judge Pryor's question that the Libertarian Party and lots of other third parties or minor parties have made the ballot both at the local and state level throughout the last 20 years, and the record is replete with examples of that, such that it can't be said to be insurmountable to leverage or to get severe—to get the severe level of scrutiny? Yes, Your Honor, that's completely correct. And what I was going to respond back to Judge Pryor's question, that this is not an insurmountable burden, that LPA's own history shows that it is not an insurmountable burden. But the recent history of LPA simply shows that they have all but abandoned the field, that they have not, like the candidates or like the parties and candidates in Stein, for instance, who challenged the regulation without actually trying to meet it. Here, LPA has not tried to run statewide candidates in recent elections. In 2018, they ran four candidates, or rather, four candidates ran under the LPA banner, and they actually approached LPA to run, not vice versa. But that was only for state house districts and two county positions. In 2020, they did not even try to gain statewide ballot access. And so this goes to Mr. Schoen's point that—I guess two responses to Mr. Schoen's points. One is that the state does not discriminate between minor and major political parties. In fact, the state defines political party by ballot access, and any political party, again, defined by ballot access, gets the voter registration list for the area in which they qualify to appear on the ballot. So if you qualify at the county level, you get the county list. If you qualify at the state level, you get the statewide voter list. And so it's not major or minor. This is also a huge distinction between Socialist Workers Party. Socialist Workers Party did distinguish between the political parties that got the 50,000 votes for governor in the previous election. And then the minor—I think it was independent political organizations is how the statute defines it. And those were parties that got access to the ballot by petition, which was a 12,000 signature threshold. They were on the ballot listed by name of their organization, and yet New York discriminated against them by not providing them the voter registration list. That's very different here. Any party that gets on the ballot is defined as a political party and therefore gets the voter registration list for that area. Are we bound by Swanson's determination that the very same standard, the ballot access standard, to get on the ballot here to get the list, was found to be non-discriminatory? Yes, Your Honor. Swanson obviously is controlling with regard to ballot access. I will note that the law providing the voter registration list was a little bit different at the time of Swanson. And so at that time, I don't think any political parties were given the list for free. And so that part is different. The law was in effect during the Stein decision. I'm talking about my question. My question is a little more nuanced than that. To get on the ballot, the standard was the 3% or 20%, right? Yes, Your Honor. That's the same test for, as I understand it, and correct me if I'm wrong, for getting the list here, correct? Yes, Your Honor. That's correct. And didn't the court, didn't we find that that standard was non-discriminatory because anyone can do it? In other words, anybody can meet the 3%, anyone can run someone and try to get 20%, right? Yes, Your Honor. Would that not apply here to the question of whether this same standard, the ballot, the 3% or 20% standard, are discriminatory or not? Yes, I think that's correct. And it would certainly be part of the analysis. I mean, this court has made clear that each case is fact-dependent under Anderson verdict. And so you do go through the analysis all over again, depending on the facts of the case. But as for whether the threshold is discriminatory or not, I completely agree that Swanson determines that it is not discriminatory. So on the other side of the ledger, the state interest ledger, Mr. Schoen ended by saying that there could be no administrative burden or there's no administrative issue here. What do you make of the concession, the one that you cited at the beginning of your oral argument, that the list doesn't go to every minor party or third party, that it only goes to some? How does that affect the administrative interest that the state claimed? If I understand your question correctly, I guess to provide a little bit of factual background, the Secretary of State's office pulls for any party requesting the list for free, that is done by hand, is done manually. It takes about an hour to come up with the list. And so there is a burden that the state is willing to undertake to provide the copies of the list to the parties who have valid access. That's part of the subsidy. The state has an interest in providing the subsidy to those parties. But I guess the point is that it's a burden that the state is willing to undertake. But if you open up the list to any self-identified political party, no matter how small, it could be just me and my neighbor, then that absolutely increases the burden on the Secretary of State's office for pulling the list each time. Well, I guess my question is a little more specific, which is the line that's drawn. So if we can see that a line has to be drawn, in other words, that not everyone under the Constitution is entitled to list, in other words, you and your neighbor are not entitled to list, but the LPA is, what of this line that goes towards the balance for the state on the administrative interest? I see. So valid access is already something that the Secretary of State's office determines. So it's a line that they're already determining. If the line were different, then it would be more an additional work from the Secretary of State's office to determine whether a party is entitled. But because valid access is already something that they have to determine, all they have to do is say, this party got valid access or this party did not. And then we know neutrally, objectively, and easily whether that party is entitled to the list. That would not be true if the line were different. Unless, of course, sorry. Well, another way to ask that sort of the flip side of that question, I guess, is there somewhere in the record where it shows how much money the state makes by selling the list? Yes, Your Honor. We know that there are, in the record, there's about 2,000 records of all the requests for the list. I think going back to 2016, maybe. No, I think since 2013. And so that does show how much money the state has made. Most of the requests are for relatively small amounts in different counties, which are very affordable. But there are a number of parties who have paid for the entire statewide list. And so that money does accrue to the state and then is used by the Secretary of State's office for voter registration efforts and other things. Right. So I guess, so for every party, not political party, I guess, but for everyone who gets the list for free, that's one less entity that's paying whatever, $300 or $30,000, depending on how much list they want. It just reduces the amount of money the state has to carry on its functions. That's correct, Your Honor. But the state has an interest in doing that because the state has an interest in subsidizing political parties. And that's clear in the record in Dr. Hershey's unrebutted expert report that was attached to the summary judgment briefing, in which he identifies all the different state interests or all the different things that political parties do that warrant or explain why a state would have an interest in subsidizing the party. There are also obviously many other interests that the state has in determining or in providing the voter registration list for free to different entities, and those are identified in the record in Doctrine entry 28-2, which were the Secretary's response to the interrogatories. And he provides a full list explaining for each entity that gets the list for free, what the state interest is in doing that. I want to go back to one of Mr. Stone's arguments about the major and minor party distinctions and how the LPA is just not like the political parties that do receive the voter list. And I think it's important that part of this analysis on the burden is an objective analysis. It is whether a reasonably diligent political party would be able to meet the threshold set by the state. And that comes from Libertarian Party of Florida, that decision. And so again, LPA has simply not been reasonably diligent in recent years to try and meet the threshold. In Laura Lane's deposition, Laura Lane is the chair of the LPA. She was asked, point blank, is LPA doing anything to actually achieve ballot access for LPA in 2020? And her response was in 2020, no. So it's very clear that unlike the political parties that LPA compares itself to, LPA has simply abandoned the field. And because of that, it is for that reason that they are not obtaining statewide ballot access and therefore not giving the state subsidy. It has very little to do with the burdens of the law itself. Unless there are any questions, we ask that the court affirm the judgment below. Thank you, Mr. Boudry. Mr. Schoen, you have a rebuttal? Yes, please. Thank you. Let me just, a couple quick points I'd like to make. First of all, Mr. Boudry, my distinguished friend, said that I said in the beginning that we don't say all, we didn't say in our brief that all should get it. That was a question Judge Pryor asked earlier. That was, well, you know, why shouldn't all of them get it? Something like that. What I say in the brief is, I don't have to make the argument that all political parties get it. And that's because the cases haven't said so far that all get it. But again, what I also said was, those cases are written in the days of mimeograph machines, which I may be the only one old enough to remember. Today, what's required, as the evidence shows, is to press a button and send an email to get the list. So there is not that administrative burden. And my position is, it'd be fine for all of them to get it. As to Judge Luck asking, well, what about, how does that impact on the administrative interest? And I think the effect of that question is, you know, you're going to have to have someone in the Secretary of State's office distinguishing between people who ask. First of all, again, I do think everyone should get it. That's what goes on in places around the country. It's not an administrative burden. But secondly, Judge Luck, we recognize the phenomenon of political parties. Political parties are registered with the state and have filing requirements. They're not every Tom or Susie that comes along anyway. But secondly, let me say this. Let's take a look at who the state gives it to for free now, and who they give it to on a monthly basis. The statewide list. The Administrative Office of the Court for free. Chief Elections Officer of any of the 50 states. Anyone else the Secretary agrees to give it to for any other state. Any election official in Alabama. Every Motor Vehicle Authority. Every member of the Alabama legislature. All state Secretary of State offices around the country. And Eric. They signed up for the Electronic Registration Information Center. Every month, State of Alabama Secretary of State gives a free list, complete statewide list, by pressing a button and sending it to Eric. So, so much of the administrative burden. But this idea now that the state has an interest, a recognized constitutional interest, in subsidizing major political parties is simply wrong. It would be unconstitutional. The cases say it over and over. I address this to some degree. Page 23, 26, 41, and 46 of the briefing. That's exactly what Socialist Workers Party and the other cases say. You can't have the state subsidizing a party. Again, Judge Brasher asked, well, isn't this really just sort of a benefit is being denied them, you know, getting the free list. What we know in our constitutional jurisprudence is we can't discriminate with either benefits or burdens like this. And this, the threshold here, the discriminating factor is major parties. Parties who qualify for statewide valid access get the list. Parties who don't, don't get it. And it's a circular argument because this is the most fundamental tool to trying to get, to try to get valid access. And without this, then you don't become that kind of major party. And so what Socialist Workers Party said, and other cases, the effect of this is to deny the list to those who can least afford to pay for it. You're imposing a financial burden here. That's what the court in Fulani said. The court in Fulani said, we don't, this court, 1992, we don't look at, modicum of support isn't based on, you know, what your financial means are. We have signature requirements. We have deadlines. That's for modicum of support, not a modicum of support to get the list. And probably most importantly, what we have to look at in all of the cases say this, is the cumulative effect of Alabama's valid access restrictions. They get you coming and going. It's the toughest state in the country, according to the undisputed expert evidence, for a minor party to get on the ballot because of all of these other things. And now to charge $36,000 to get access to the voters who maybe would be willing to give a signature if they got our platform. That's it. So we're denying them the tools. But let me be clear. I don't say, Judge, look, that the rule should be not everyone should get it. I say today, as easy as it is to give it, everyone should get it who wants a free list. And that would not require an administrative burden. It could be published publicly also. And in some of those earlier cases, by the way, in which it struck this down, they still offered that kind of safety valve mechanism. They offered the list in public forums. The idea, again, respectfully, Judge Bradshaw, the idea that we can discriminate. I know the court may not accept the premise of discrimination, but I do. The fact that we can discriminate is OK if the state makes money off of it. It simply doesn't find its place in any constitutional jurisprudence, any place. And I don't mean to. Let me ask you a quick question about that. So, I mean, it seems to me like you're the main kind of linchpin of your argument is this idea that the state doesn't have a constitutional interest in subsidizing one group of political parties and not another group of political parties. I mean, that's the linchpin of your argument as I see it. What do you do with the affidavit from the expert that says that the state has that interest? I mean, is that a factual question? Is that a legal question? How do we analyze whether the state has that interest or not? It is of absolutely no moment to the analysis. This person's opinion, contradicted elsewhere in her writings, by the way, has absolutely no meaning, no significance whatsoever in the analysis case on that issue. My time is long out, I'm afraid, but I thank you for your indulgence. Let me go over time both times. Thank you very much. Thank you very much. Your arguments have been very helpful. We appreciate it. May we be excused? Yes, you may.